**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Timmothy C. LINCOLN, Defendant– Appellant.**

**No. 02–2653.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 18, 2002.

Decided Jan. 16, 2003.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

## ORDER

Timmothy C. Lincoln was convicted following a bench trial of three counts of worker's compensation fraud, 18 U.S.C. § 1920, and one count of making a false statement to a federal agency, 18 U.S.C. § 1001. He was sentenced to 15 months' imprisonment and three years of supervised release on each count to run concurrently, $400 in special assessments, and $13,160.69 in restitution. Lincoln appeals, arguing that insufficient evidence supported his conviction for making a false statement, and that the district court erred during sentencing in applying a two-level increase in his offense level for obstruction of justice based on perjury, U.S.S.G. § 3C1.1. We affirm.

In December 1999 Lincoln injured his wrist while working as a custodian for the United States Postal Service. Due to his injury he began working a "limited duty position," in which he performed such tasks as light filing and answering the telephone. Between September and November 2000, Lincoln submitted a number of worker's compensation forms to his supervisor, claiming that he could not perform custodian or even limited duties due to his wrist injury, and seeking compensation for periods between July and November of that year. On those forms, one question asks claimants whether they have worked outside of their federal job during the period in which they are seeking benefits, including salaried, volunteer, or self-employed work. On each form Lincoln either checked "no" or left the question blank.

In January 2001 Lincoln participated in an interview with a Postal Service Human Services Specialist, an agent from the Department of Labor, a nurse, and a union representative. Consistent with his claim forms, Lincoln reported that due to his wrist injury he could not perform even light activities and that he had not been employed outside of his federal job since his injury. In March Lincoln participated in a second interview with the same Department of Labor agent and a Postal Service inspector. Lincoln reported that he understood the claim forms he filled out and did not wish to make any changes. He reported that he could he use his left wrist only for physical therapy, did not work outside of his federal employment, and due to his injury did not leave the house except to go to doctors, therapy, or the post office. Lincoln was then shown copies of time-card and payment records showing that he had been working at a local university bookstore during the periods he sought federal worker's compensation. He was also shown a surveillance videotape showing him unloading boxes, brushing snow off of his car with a broom, and shoveling snow. He denied that he had been working at the bookstore and claimed that the activities on the tape were intended as exercise for his injured wrist. In August a grand jury returned a four-count indictment: three counts of worker's compensation fraud, and one count of making false statements to a government agent for his statements that he (1) was not working; (2) could use his left wrist for physical therapy only; and (3) left his house only to go to doctors, therapy, and the post office.

Lincoln testified at trial and again maintained that his injuries prevented him from working and that he did not work at the bookstore. He testified that he was at the bookstore to help out his girlfriend, who worked there, and that he did not fill out an employment application. The government offered (1) payment and time-card records showing that Lincoln earned approximately $510 working at the store during the months in which he claimed worker's compensation (and that he had worked there throughout 2000 and into 2001); (2) Lincoln's employment application with the

bookstore; (3) testimony from a bookstore employee that Lincoln worked there; and (4) Lincoln's Postal Service application listing the bookstore as his current place of employment.

The district court found Lincoln guilty on the fraud counts after concluding that he knowingly lied on his claim forms about his employment at the bookstore and the extent of his injury. The court also found that Lincoln made a false statement to a government agency when he reported during his interviews that he did not work outside of his federal employment, could not use his left arm for any activity other than physical therapy, and left his house only to go to doctors, therapy, or the post office. The court also found that Lincoln committed perjury at trial when he testified that he did not work at the bookstore and did not fill out an employment application, and therefore applied an offense-level increase for obstruction of justice under § 3C1.1.

Lincoln first challenges the sufficiency of the evidence on his conviction for making a false statement to a government agency. To convict Lincoln under § 1001 the government needed to prove that he made a statement that was (1) false; (2) material; (3) about a matter within the jurisdiction of a federal department or agency; and (4) made knowingly and willfully. *United States v. Ringer*, 300 F.3d 788, 791 (7th Cir.2002); *United States v. Hoover*, 175 F.3d 564, 571 (7th Cir.1999). He challenges only the "knowingly and willfully" element, arguing that even though his representations were false, they were "careless" and not made with "an intent to defraud the Government." The government does not have to prove that Lincoln intended to defraud the government, *see United States v. Yermian*, 468 U.S. 63, 68–75, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984), only that one of his false statements was made knowingly and willfully,

*see United States v. Ranum*, 96 F.3d 1020, 1027–28 (1996).

■ Ample evidence supports the district court's findings that Lincoln's false statements to federal agents were knowing and willful. First, sufficient evidence supports the finding that Lincoln lied about not working at the bookstore. Time cards, earnings statements, an application, a videotape, and testimony from a co-worker established conclusively that he did in fact work there. Moreover, the court found that the claim form was clear and neither misleading nor confusing, and that during his interviews Lincoln admitted that he understood the forms and again reported (as he also did on the witness stand) that he did not work there. Second, sufficient evidence supported the finding that he lied about the extent of his injury–the government's videotape showed Lincoln unloading boxes, using a broom, and shoveling snow during the time period he claimed he could not use his left wrist or do even light work. Third, the same tape, showing Lincoln working at the store, also belied his statement that he never left the house except to go to the doctor, therapy, or the post office. Construing this evidence in favor of the government, the district court had a rational basis for concluding that Lincoln's false statements to federal agents were knowing and willful rather than a result of carelessness.

■ Finally, Lincoln challenges the two-level increase in offense level for obstruction of justice, § 3C1.1, arguing that "the perjury did not create a burden on the justice system." This argument misstates the appropriate inquiry. Perjury warrants application of § 3C1.1, *United States v. Dunnigan*, 507 U.S. 87, 88–89, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), and we will uphold an application based on perjury so long as the district court made an independent factual determination that the defendant committed perjury, *United States v.*

*Owens,* 308 F.3d 791, 795 (7th Cir.2002); *United States v. White,* 240 F.3d 656, 661–62 (7th Cir.2001). There is no further requirement that the perjury "create a burden of the justice system," as there is with statements not made under oath. *See, e.g., United States v. Wells,* 154 F.3d 412, 414–15 (7th Cir.1998) (statement to police officer warranted § 3C1.1 application because it had consequence of impeding investigation); *United States v. Barnett,* 939 F.2d 405, 407 (7th Cir.1991) (statement to police did not warrant application because it did not impede investigation). Because the district court made an independent finding that Lincoln committed perjury, the upward adjustment was appropriate.

AFFIRMED.